UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: **25-CR-14016-CANNON/MAYNARD**

**UNITED STATES OF AMERICA**

vs.

**JOSHUA DWAYNE BLACK,**

      **Defendant.**

_____/

**UNITED STATES' MOTION TO ADMIT RELEVANT, INEXTRICABLY INTERTWINED AND ALTERNATIVELY 404(B) EVIDENCE**

The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully moves the Court to admit evidence that is inextricably intertwined with, and which provides necessary background and context for, the charged conduct, and evidence that is admissible pursuant to Federal Rule of Evidence 404(b), to prove motive, intent, preparation, plan, and absence of mistake. The evidence that the Government seeks to admit falls into three categories:

(1) The Defendant's sexual relationship with the Minor Victim leading up to the charged conduct, including child sexual abuse material depicting the Minor Victim recovered from the Defendant's cell phone;

(2) The Defendant's search history leading up to and during the charged conduct for terms indicative of a sexual interest in both minors and the Minor Victim; and

(3) Child sexual abuse material images recovered from the Defendant's cell phone that depict minors other than the Minor Victim.

I.  **Charges**

The Defendant is charged by Indictment with one count of Coercion and Enticement of a Minor to Engage in Sexual Activity, from on or about February 9, 2025, through on or about February 24, 2025, in violation of 18 U.S.C. § 2422(b); and one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor, from on or about February 21, 2025, through on or about February 24, 2025, in violation of 18 U.S.C. § 2423(b). (DE 8).

II. **Summary Of The Evidence**

A.  **Minor Victim's Disclosure**

On Thursday, February 27, 2025, the mother of a 15-year-old female (the "Minor Victim") reported to law enforcement that her daughter disclosed that the Defendant, the Minor Victim's biological father, had sexual intercourse with her on multiple occasions beginning when she was approximately 13 years old. The Minor Victim disclosed that the last incident occurred on February 23, 2025, when the Defendant traveled from Arizona, where he resided, to Indian River County, Florida, where the Minor Victim resided, to visit the Minor Victim.

The Minor Victim was forensically interviewed. During the interview, the Minor Victim disclosed that the Defendant first touched her sexually during the summer of 2023, when she was traveling with the Defendant, who was employed as a truck driver, in his semi-truck. The Minor Victim stated that during this summer trip, the Defendant had sexual intercourse with her on multiple occasions. The Minor Victim believes that the trip was the second time that she had ever seen the Defendant in person, and that she had infrequent contact with the Defendant throughout her life leading up to the trip. Then, on February 22, 2025, the Defendant arrived in Florida from Arizona, to spend the weekend with the Minor

Victim. The Defendant rented a hotel room at a Vero Beach hotel, where he stayed with the Minor Victim. The Minor Victim stated that the Defendant had sexual intercourse with her multiple times between February 22, 2025, and February 23, 2025, at the Vero Beach hotel.

The Minor Victim's mother told law enforcement that the Minor Victim returned home the evening of February 23, 2025, and she noticed a change in the Minor Victim's behavior. The Minor Victim's mother stated that the Minor Victim expressed missing the Defendant however, it seemed more than a daughter missing her father. The Minor Victim's mother felt that something wasn't right. The Minor Victim's mother asked her if she had engaged in sexual intercourse recently. The Minor Victim became defensive and although she denied sexual intercourse, the Minor Victim's mother kept asking over the following days. The Minor Victim eventually stated, "I don't want to tell you because I don't want him to be in trouble." After further discussion with her mother, the Minor Victim ultimately admitted that she had sexual intercourse with the Defendant over the weekend at the Vero Beach hotel.

### B. The Defendant's Recorded Phone Call With The Minor Victim's Mother

After the Minor Victim disclosed the abuse to her mother, the Minor Victim's mother called the Defendant on the phone and confronted him. The Minor Victim's mother recorded the phone call. During the call, the Defendant denied having sexual intercourse with the Minor Victim, although he did admit that when the Minor Victim was 12 years old, he purchased her a "dildo" and a "vibrator" because he claimed that the Minor Victim was "struggling with her sexual urges." The Minor Victim's mother asked the Defendant if she was to take her daughter to the doctor, "is a doctor gonna tell us she had sex recently?" and his reply was "he might." The Minor Victim's mother also asked the Defendant "does our 15-year-old daughter need a Plan B after spending the weekend with you Joshua?" and his reply

3

was "I don't think so."

### C. Minor Victim's Cell Phone

The Minor Victim's mother consented to law enforcement's search of the Minor Victim's cell phone. A preliminary forensic examination of the Minor Victim's cell phone revealed text messages with a phone number ending in 8736 (the "8736-Number"), that was saved in the Minor Victim's cell phone as "Daddy." AT&T records confirmed that the 8736-Number has been registered to the Defendant since January 2020.

The following messages between the Minor Victim and the Defendant were recovered from the Minor Victim's cell phone:

On February 21, 2024, at approximately 8:44 a.m., the Defendant messaged the Minor Victim, "In a few hours I'll be getting on a plane to you."

Then, on February 22, 2024, at approximately 1:14 a.m., the Defendant messaged the Minor Victim, "Officially in Orlando I am. On the ground and everything"

On February 23, 2025, at approximately 12:52 p.m., the Defendant messaged the Minor Victim, "I'm gonna fuck you until you scream." At approximately 12:53 p.m., the Defendant messaged the Minor Victim, "And cum in your ass." At approximately 12:55 p.m., the Minor Victim messaged the Defendant, "Ribit," to which the Defendant responded, "Ribbit on my cock." At approximately 12:58 p.m., the Defendant told the Minor Victim, "Be a good girl and suck daddy's cock," to which the Minor Victim responded, "Damn… ok." The Defendant then messaged, "And if you do a good job, I'll give you a special reward." The Minor Victim told law enforcement that the text messages she exchanged with the Defendant on February 23, 2025, occurred while they were together inside the Vero Beach hotel room.

4

On February 26, 2025, at approximately 7:30 p.m., the Minor Victim told the Defendant that her mother was asking her if she had sex, and the following conversation ensued (emphasis added):

| Minor Victim | **Apparently, my mom's asking if I've had sex…** |
|---|---|
| Defendant | Not recently |
| Defendant | That I know of |
| Minor Victim | But she says the way I said "no" makes her think I did… I don't know how to respond |
| Defendant | Of course |
| Minor Victim | I know, right? |
| Defendant | As far as I know it was just that one time last year But I know don't know everything |
| Minor Victim | I told her Help.. |
| Defendant | About what? |
| **Minor Victim** | **I can't hold off on your secret anymore…** |
| **Defendant** | **Oh no** |
|  | … |
| Defendant | What did you tell her? |
| Minor Victim | Most of it… |
| Defendant | Most? |
| Minor Victim | 75%-93% |
| Defendant | **Did you tell her we did things?** |
| Minor Victim | I plea the fith [sic] |
| Defendant | So yes<br><br>I love you very much beautiful [Minor Victim's first name] |
| Minor Victim | I love you |
| Defendant | **I guess we'll see where this goes** |

**D. Defendant's Cell Phone**

On March 17, 2025, the Defendant was arrested in Arizona pursuant to the arrest warrant issued in this case. *See* Criminal Complaint, 25-MJ-00030-SMM (DE 3). Law enforcement attempted to interview the Defendant however he invoked his right to remain silent after being read his *Miranda* rights. Law enforcement collected the Defendant's cell phone from his person incident to his arrest, and a federal search warrant was obtained to

5

search the phone. *See* In Re: Search Warrant, 25-MJ-00025-SMM. The forensic examination of the Defendant's cell phone revealed the following evidence the Government seeks to admit at trial in this case:

> **1. The Defendant's Sexual Relationship With The Minor Victim Leading Up To The Charged Conduct, Including Child Sexual Abuse Material Depicting The Minor Victim Recovered From The Defendant's Cell Phone**

In addition to the Minor Victim's testimony detailing her sexual involvement with the Defendant over the approximate two-year period leading up to the charged conduct, the Government seeks to admit approximately 30 sexually explicit images of the Minor Victim that were recovered from the Defendant's cell phone. The Minor Victim reviewed a couple of nude selfie images that were recovered from the Defendant's cell phone, and she identified herself in the images and stated that she sent the images to the Defendant.

Six of the recovered images appear to be screenshots from a video call with the Minor Victim. In one of the images, the Minor Victim's face is visible, and she is masturbating, while a male is lying in bed with his penis exposed. The Defendant's face is not visible in the image, however the image appears to be taken inside the bed of the Defendant's semi-truck. The Defendant's semi-truck can be identified from other images recovered from the Defendant's cell phone that depict the Defendant, with his face visible, inside the same area of the truck. The Minor Victim identified herself and the Defendant in the image and stated that she was masturbating on the video call. The screenshot images had a last modified date of April 19, 2024, at 11:48 a.m. The call log from the Defendant's cell phone shows that the Defendant had a video call with the Minor Victim on April 19, 2024, starting at 11:33 a.m., for just over an hour.

6

2. **The Defendant's Search History Leading Up To And During The Charged Conduct For Terms Indicative Of A Sexual Interest In Both Minors And The Minor Victim**

Law enforcement recovered searches that had been conducted using the Defendant's cell phone between January 19, 2025, and February 16, 2025, for items including, among other things, "#ddlg,"[1] "#little girl," "#FamilyIncest," "#familysecrets," "#daddykink," "teen pussy," and "Daddy's little slut." The searches have been attached as Exhibit 1.

3. **Child Sexual Abuse Material Images Recovered From The Defendant's Cell Phone That Depict Minors Other Than The Minor Victim**

Law enforcement recovered an image of a minor female from the Defendant's cell phone that had been manipulated using the "Undress" application to remove her clothing. Both the clothed image and the unclothed image of the minor were recovered from the Defendant's cell phone. The minor is a family member of the Defendant. The original clothed image was captured on September 22, 2023, when the minor was 17 years old.

Additionally, law enforcement recovered an image in the Defendant's cell phone that contains 12 thumbnail images arranged in a collage depicting child sexual abuse material. The thumbnail images depict minors engaged in anal, vaginal, oral sexual intercourse, and masturbation. Although it's unclear when, the collage image appears to have been accessed from the Internet from the Defendant's cell phone and the minors depicted have not yet been identified.

---

[1] "ddlg" is an acronym for daddy dom/little girl, a sexual relationship where the dominant male is the daddy figure and a woman plays the role of a young girl. *See www.dictionary.com/e/acronyms/ddlg/* (June 23, 2025).

## III. Legal Standard

### A. Direct and Inextricably Intertwined Evidence

Evidence of other acts is not extrinsic if it: (1) arose out of the same transaction as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably linked with the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008) (quoting *United States v. Jiminez*, 224 F. 3d 1243, 1249 (11th Cir. 2000)). It is axiomatic that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McClean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)); *see also United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (holding that "evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses to which the defendant was indicted.'" (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).

Moreover, the United States is "not required to provide notice of intrinsic evidence." *United States v. Thanh Quoc Hoang*, 560 F. App'x 849, 853 (11th Cir. 2014) ("Hoang complains that he was not notified before the evidence was introduced at trial, but the government was not required to provide notice of intrinsic evidence."); *see also United States v. U.S. Infrastructure, Inc.,* 576 F.3d 12195, 1210 (11th Cir. 2009); *United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir. 1989) ("Since these acts are not 404(b) evidence, the government was not required to give the defendants notice of their intention to use them.").

### B. 404(b) Evidence of Other Crimes, Wrongs, or Acts

Pursuant to Federal Rule of Evidence 404(b), while "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). Courts in this Circuit apply a three-prong test to assess the admissibility of evidence under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003), *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019).

The Eleventh Circuit has recognized that Rule 404(b) is "a rule of inclusion, and . . . accordingly '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.'" *Id.* (quoting *United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994)); *see also United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004)). Rule 404(b) is a rule "of inclusion which allows [extrinsic] evidence unless it tends to only prove criminal propensity. The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." *Stephens*, 365 F.3d at 975 (quoting *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989) (internal quotations omitted)). "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent

9

affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998). ("The relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses."). Finally, as with any evidence, the probative value of proffered 404(b) evidence must not be *substantially outweighed* by unfair prejudice. *Jernigan*, 341 F.3d at 1282 (internal quotations omitted) (emphasis in original). "This determination lies within the sound discretion of the district judge and calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Id.*

IV. <u>Analysis</u>

   A. **Child Sexual Abuse Material Images Recovered From The Defendant's Cell Phone That Depict Other Minors Are Admissible as 404(b) Evidence.**

The enticement charge in Count 1 of the Indictment requires the Government to prove that the Defendant knowingly persuaded, induced, enticed, or coerced the Minor Victim to engage in sexual activity, and that the Minor Victim was less than 18 years old at the time. 11th Circuit Pattern Jury Instructions, OI92.2. The term "knowingly" means that "an act was done voluntarily and intentionally and not because of a mistake or by accident." 11th Circuit Pattern Jury Instructions, B9.2. The travel charge in Count 2 of the Indictment requires the Government to prove that the Defendant traveled in interstate commerce for the purpose of engaging in illicit sexual conduct. 11th Circuit Pattern Jury Instructions, OI93.2.

Applying the Eleventh Circuit's three-pronged test for admissibility under Rule 404(b), we first look to whether the evidence is "relevant to an issue other than the defendant's character." *Jernigan*, 341 F.3d at 1280. The images are relevant to show that the Defendant

10

committed the charged enticement and travel offenses with the requisite *mens rea*, not that the charges are the result of a mistake. In other words, the sexually explicit images of minors in the Defendant's cell phone show that the charged conduct wasn't the result of a misunderstanding, or a frame job by an angry teenager and her mother, but rather was the result of the Defendant's premeditated plan to satisfy his sexual interest in minors, and specifically his daddy-daughter fetish.

Second, there is sufficient admissible evidence "such that the jury could find that the defendant" knowingly possessed the child sexual abuse material depicting other minors. *Jernigan*, 341 F.3d at 1280. An agent who arrested the Defendant will testify that his cell phone was collected from his person. Phone records will show that the number associated with that phone is the same as the phone number communicating with the Minor Victim. Other evidence from the cell phone will be introduced to show that the Defendant was the user of the cell phone. Moreover, a digital forensic examiner will testify about the child sexual abuse material images themselves, including the file information associated with the images. The jury will be able to review the images and determine whether they depict minors engaged in sexually explicit conduct.

And third, the probative value of the evidence is not "*substantially outweighed* by unfair prejudice." *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997) (emphasis in original). As an initial matter, Rule 403 is "an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (citation and internal quotations omitted). "To determine whether the evidence is more probative than prejudicial, a district court must engage in a commonsense assessment of all the circumstances surrounding the extrinsic

offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009) (cleaned up).

Here, the Government must prove that the Defendant knowingly induced the Minor Victim to engage in sexual activity and traveled for that purpose. A defendant's intent is an element that is notoriously hard to prove. Further, the Defendant's not guilty plea to the Indictment has made intent a material issue, which imposes a substantial burden on the Government to prove intent. The Eleventh Circuit has stated that intent may be proven by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue. *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("The relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses."). In this case, the Defendant has made it clear—first, when he refused to speak with law enforcement about the charged conduct, and second, when he pled not guilty to the charged offenses, that he intends to require the Government to carry the heavy and difficult burden of proving his state of mind. Therefore, the probative value of the proffered evidence to prove the *mens rea* of the charged offenses could not be greater, meaning the "prosecutorial need" for the evidence is significant.

Indeed, the Eleventh Circuit has clearly acknowledged the logical connection between a defendant's sexual interest in children at different points in time and the relevance of that evidence in both enticement and child pornography cases. *See United States v. Levinson*, 504 F. App'x 824, 828 (11th Cir. 2013) (affirming admission of defendant's other internet chat sessions and possession of real and virtual child pornography as admissible under Rule 404(b) because it was relevant to the issue of intent and was not substantially more prejudicial than

12

probative); *United States v. Syed*, 616 F. App'x 973, 980-81 (11th Cir. 2015) (affirming admission of prior online communications with two minor females because the prior communications were relevant and "highly probative" of defendant's intent in the instant case); *United States v. Godwin*, 399 F. App'x 484, 489–90 (11th Cir. 2010) (affirming admission of the portion of the videotape in which defendant admitted that he had engaged in similar online sex talk with other minor girls as relevant to prove his intent to induce minor to engage in illegal sexual activity and to undermine his entrapment defense); *United States v. Hardy*, 520 F. App'x 835, 839-40 (11th Cir. 2013) (affirming admission of defendant's prior possession of child pornography under Rule 404(b)); *United States v. Gates*, 351 F. App'x 362, 367 (11th Cir. 2009) (affirming admission of evidence of defendant's prior relationship with 16-year-old boy as relevant to his intent because minor in prior relationship was nearly the same age as the purported minor at issue and defendant expressed a desire to engage in similar sexual activities with the purported minor); *United States v. Chase*, 367 F. App'x 979, 982 (11th Cir. 2010) (affirming admission of chat where defendant described his molestation of a child, among other evidence, because it showed a defendant's sexual interest in young girls and therefore served as proof of defendant's specific intent to entice a minor into engaging in unlawful sexual acts).

Finally, the Eleventh Circuit has crafted a limiting instruction that is designed to ensure that the jury is informed of the limited purpose for which Rule 404(b) evidence is admitted, both at the time the evidence is admitted and at the close of the case. *See* Eleventh Circuit Pattern Jury Instructions, T1.1 (end of trial instruction), Eleventh Circuit Pattern Jury Instructions, S4.1 (end of trial instruction). The Government has no objection to the Court giving this limiting instruction at the time that 404(b) evidence is admitted, as well as at the

end of the case. To the extent that there is a risk of unfair prejudice from admitting this evidence, any prejudice that could arise from admitting the uncharged evidence will be mitigated by a limiting instruction. *See United States v. McNair*, 605 F.3d 1152, 1204 (11th Cir. 2010) (explaining that limiting instructions can mitigate risk of unfair prejudice from admission of Rule 404(b) evidence).

### B. The Defendant's Sexual Relationship With The Minor Victim Leading Up To The Charged Conduct Is Admissible As Direct, Inextricably Intertwined Evidence, And Alternatively Under Rule 404(b).

The full scope of the Defendant's sexual relationship with the Minor Victim, including the sexually explicit images of the Minor Victim that were found on his cell phone, should be admitted as intrinsic evidence of the charged conduct because it is linked in time and circumstances with the charged crime, forms an integral and natural part of the accounting of the crime, and is necessary to complete the story of the crime for the jury. *McClean*, 138 F.3d at 1403 (citations omitted). The proffered evidence speaks directly to the central issues in this case—the Defendant's intent and purpose. The Defendant's sexual relationship with the Minor Victim leading up to his Florida travel—including hands-on sexual abuse, sexually explicit communications, and producing and receiving child sexual abuse material from the Minor Victim—explains the context, motive, and set-up of the Defendant's crimes. The Defendant didn't travel to Florida and rent a hotel room with the Minor Victim to have innocent quality father-daughter time. Rather, he did so to have unfettered access to the Minor Victim so that he could sexually abuse her how and when he wanted. To require sanitization of the Government's case presentation by precluding any sexual activity leading up to the charged conduct would both mislead the jury and provide an incomplete story of the Defendant's crimes. Further, the Minor Victim's testimony about how the sexual abuse

14

started, continued for almost two years, and then culminated in the Defendant renting a hotel room with the Minor Victim, forms an integral and natural part of the accounting of the charged conduct. The sexual exploitation leading up to the last weekend of abuse that the Minor Victim endured, for which the Defendant has been charged, simply cannot be excised from the Minor Victim's testimony as it is an inextricably intertwined part of the Minor Victim's story and necessary for the jury to understand how the Defendant's crimes were committed.

Alternatively, the evidence of the Defendant's sexual exploitation of the Minor Victim leading up to the charged conduct is admissible under Rule 404(b). The proffered evidence is directly relevant to the Defendant's motive, intent, preparation, and plan to sexually abuse the Minor Victim, and is more probative than prejudicial. The Government has a strong need for the evidence as the Defendant's recurrent sexual abuse of the Minor Victim demonstrates his intent in traveling to Florida to engage in sexual activity. It is also strikingly similar to the charged conduct as it relates to the abuse of the same victim, and the uncharged abuse is close in time to the charged conduct.

Moreover, based on the Minor Victim's testimony corroborated by the cell phone evidence, the jury could reasonably find that the Defendant committed the uncharged sexual abuse. The Supreme Court's decision in *Huddleston v. United States*, 485 U.S. 681 (1981) governs the admissibility of evidence under Rule 404(b). *United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005). In *Huddleston*, the Supreme Court held that the admissibility of other act evidence under Rule 404(b) is governed by the rule of conditional relevance in Fed. R. Evid. 104(b). *Id.* (citing 485 U.S. at 689). "When determining whether there is sufficient evidence to satisfy Rule 104(b), the court is not required to make any preliminary finding that the

15

government has proved the conditional fact." *Id.* (internal citations omitted). Instead, the court should examine all the evidence and decide whether the jury could reasonably find the conditional fact by a preponderance of the evidence, which is the case here. *Id.*

### C. The Defendant's Search History Leading Up To And During The Charged Conduct Is Admissible As Direct, Inextricably Intertwined Evidence, And Alternatively 404(b) Evidence.

Finally, the Government seeks to admit the searches conducted on the Defendant's cell phone for items related to his sexual interest in the father-daughter dynamic and young girls. Such evidence is necessary for the jury to understand the "context, motive, and set-up" of the Defendant's crimes. Specifically, that the Defendant traveled to Florida for the purpose of engaging in sexual activity with the Minor Victim, and that his communications leading up to his travel and during his stay in Florida were intended to induce the Minor Victim to engage in sexual activity with him.

This evidence is also admissible under Rule 404(b) for all the reasons stated above, and survives a Rule 403 analysis. As mentioned previously, the Defendant declined to speak with law enforcement, denied engaging in sexual activity with the Minor Victim when he spoke with her mother, and the Government expects that the Defendant will maintain his denial throughout the pendency of this case. The Government therefore carries the heavy burden of proving the Defendant's intent, which can be a difficult task. The Defendant's search history would provide the jury with a critical glimpse into the Defendant's thoughts, desires, and curiosities. Further, the searches are particularly relevant because they occurred just before the Defendant traveled to Florida, and while he was communicating with the Minor Victim about traveling to Florida to meet with her. The Defendant's search history would be presented by a digital forensic examiner during trial along with other evidence that shows the

Defendant was the user of the cell phone, and the jury could reasonably find that the Defendant was responsible for the searches on his cell phone.

## V.     Conclusion

For all these reasons, the United States respectfully requests that the Court admit the above-described evidence as inextricably intertwined or Rule 404(b) evidence.

## VI.    Rule 88.9 Certification

The undersigned AUSAs have conferred with Counsel for the Defendant, who has stated that she must view the proffered evidence before she can properly state any objection. The parties are in the process of finding mutually convenient dates so that Defense Counsel can review the electronic evidence.

                              HAYDEN P. O'BYRNE
                              UNITED STATES ATTORNEY

By:    s/ Jessica Kahn Obenauf
          Jessica Kahn Obenauf
          Assistant United States Attorney
          Florida Bar No. 0052716
          U.S. Attorney's Office
          101 South US Highway 1, Suite 3100
          Fort Pierce, Florida 34950
          Tel: (772) 293-0981
          Email: jessica.obenauf@usdoj.gov

          s/ Justin L. Hoover
          Justin L. Hoover
          Assistant United States Attorney
          Court ID A5502493
          U.S. Attorney's Office
          101 South US Highway 1, Suite 3100
          Fort Pierce, Florida 34950
          Tel: (772) 466-0899
          Email: justin.hoover@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the June 9, 2025, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Jessica Kahn Obenauf
Jessica Kahn Obenauf
Assistant United States Attorney